COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-05-292-CV

 

 

ABN AMRO MORTGAGE GROUP                                            APPELLANT

 

                                                   V.

 

TCB FARM AND RANCH LAND INVESTMENTS                            APPELLEE

 

                                              ------------

 

            FROM
THE 367TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

ABN AMRO Mortgage Group (AABN@) appeals
from a summary judgment in favor of Appellee TCB Farm and Ranch Land
Investments (ATCB@) and the denial of summary judgment in favor of ABN.  The key issue before us is the superiority of
rights between the parties regarding real property sold at a transferred tax
lien foreclosure sale.  We reverse the
trial court=s summary
judgment in favor of TCB and render judgment for ABN.








                                            Background

The essential facts of the
case are not in dispute.  In May 2000,
Sue Fleckenstein purchased real property at 4300 Mesa Drive in Carrollton, Denton
County, Texas.  She and her husband
borrowed $197,500 from Greenpoint Mortgage Funding, Inc. and $37,036 from
Compass Bank, giving Greenpoint a vendor=s lien and deed of trust and Compass Bank a second lien deed of
trust.  On September 6, 2002, the
Fleckensteins refinanced the vendor=s lien and the two deeds of trust with ABN for a total loan of
$241,000, executing a new deed of trust to ABN as security for the
refinancing.  

By mistake, ABN=s deed of trust was not filed of record until October 7, 2003.  In the meantime, the Fleckensteins fell
behind on their ad valorem property taxes and arranged for payment of those
taxes by Genesis Tax Loan Services, Inc. (AGenesis@).  On July 23, 2003, the Fleckensteins executed
a deed of trust to Genesis as security for the payment of their taxes by
Genesis. The deed of trust to Genesis recites:

Notice:  this Lien Is a Transfer Tax
Lien Executed Pursuant to Section 32.06 of the Texas Tax Code.  This Lien Is a Superior Lien and Takes
Priority over a Homestead Interest in the Property and Takes Priority over the
Claim of Any Holder of a Lien on Property Encumbered by this Tax Lien, whether
or not the Lien Existed Before Attachment of this Tax Lien.  See Section 32.05 of the Texas Tax
Code. 








The Fleckensteins also
executed an Affidavit Authorizing Transfer of Tax Lien.  On August 5, 2003, the Denton County Tax
Collector certified and transferred its tax lien to Genesis for the payment by
Genesis of the delinquent taxes owed by the Fleckensteins.  On September 23, 2003, about two weeks before
ABN filed its deed of trust, Genesis filed its deed of trust, the Affidavit,
and the Denton County Tax Collector=s certificate of transfer of the tax lien.      The Fleckensteins thereafter defaulted on both ABN=s and Genesis=s notes and
declared bankruptcy.  Genesis obtained an
order lifting the stay in the bankruptcy proceeding and, on December 14, 2003,
posted the property for non-judicial foreclosure, notifying all parties
claiming an interest, including ABN. On March 2, 2004, Genesis foreclosed on
its transferred tax lien and conveyed the property by foreclosure sale deed to
TCB for the bid price of $10,680.  TCB
recorded its foreclosure sale deed on the same date.  TCB also purchased all remaining rights of
the Fleckensteins, who executed a ADeed without Warranty@ to TCB, including any rights of redemption held by the Fleckensteins
at the time of the foreclosure sale.   








On March 12, 2004, ABN served
notice on Genesis that it stood ready to tender the payoff amount of Genesis=s deed of trust pursuant to Section 32.06(f) of the tax code.  On March 22, 2004, ABN tendered to TCB the
amount necessary to redeem the property under tax code Section 32.06(i). Both
Genesis and TBC refused ABN=s attempted redemption.  

On April 12, 2004, ABN filed
this suit against Genesis for wrongful foreclosure and against TCB for a
declaratory judgment.[1]  ABN sought to rescind the foreclosure sale
deed to TCB and to confirm ABN=s right as secured lienholder to redeem the property from TCB pursuant
to Section 32.06(i) of the tax code or, alternatively, to declare that ABN
holds an equitable lien in the amount of $234,134.91 and to order sale to
foreclose on that lien.  TCB asserted a
counterclaim to quiet title to the property and to declare it the owner free
and clear of ABN=s lien.  The parties filed cross-motions for
traditional summary judgments.  

The trial court denied ABN=s motion for summary judgment and granted TCB=s cross-motion on the ground that Genesis had acquired a valid first
lien under Chapter 32 of the tax code and that ABN=s lien was extinguished by the foreclosure sale to TCB, and ordered
title quieted in TCB to the property, free and clear of ABN=s lien. 

 








                                       Standard of Review

We review a trial court=s summary judgment de novo. 
Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex.
2005).  In a traditional summary judgment
case, the issue on appeal is whether the movant met the summary judgment burden
by establishing that no genuine issue of material fact exists and that the
movant is entitled to judgment as a matter of law.  Tex.
R. Civ. P. 166a(c); Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211,
215 (Tex. 2002); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d
671, 678 (Tex. 1979).  When both parties
move for summary judgment and the trial court grants one motion and denies the
other, the reviewing court should review both parties= summary judgment evidence and determine all questions presented.  FM Props. Operating Co. v. City of Austin,
22 S.W.3d 868, 872 (Tex. 2000).  The
reviewing court should render the judgment that the trial court should have
rendered.  Id.

                              The Transfer of Tax Lien Statute








On January 1 of each year, a
tax lien attaches to property to secure the payment of all taxes, penalties,
and interest ultimately imposed for the year on the property.  Tex.
Tax Code Ann. ' 32.01(a)
(Vernon 2001).  An owner of real property
may authorize another person (the Atransferee@) to pay
taxes imposed by the taxing unit.  Id.
' 32.06(a)(2)-(a-1) (Vernon Supp. 2005).  When the transferee pays the taxes, the tax
collector certifies that the taxes have been paid by the transferee and that
the tax lien has been transferred to the transferee.  Id. ' 32.06(b). 
To be enforceable, the transferred tax lien must be recorded.  Id. ' 32.06(d).  

The transferee or any
successor in interest is entitled to foreclose on the lien.  Id. ' 32.06(c).  However, the statute
provides the owner and the holder of a first lien with the right to redeem the
property from the purchaser at the tax sale. 
Id. '
32.06(i).  The version of Section
32.06(i) in effect when Genesis foreclosed on the transferred tax lien provided
for redemption as follows:

The
person whose property is sold as provided by this section or any person
holding a first lien against the property is entitled, within one year
after the date the property is sold, to redeem the property from the purchaser
at the tax sale by paying that purchaser the tax sale purchase price, plus
costs, and interest accrued on the judgment to the date of redemption or 118
percent of the amount of the judgment, whichever is less.

 

Act of May 7, 1995, 74th Leg., R.S., ch. 131, ' 1, 1995 Tex. Gen. Laws 957, 958 amended by Act of May 29,
2005, 79th Leg., R.S., ch. 1126, ' 13, 2005 Tex. Gen. Laws 3717, 3720 (current version at Tex. Tax Code Ann. ' 32.06(k) (Vernon 2005)) (emphasis added).[2]








                                             Discussion

In its first issue, ABN
contends that the trial court erred by granting TCB=s summary judgment and quieting title in TCB on the ground that ABN
was not the holder of the Afirst lien@ as provided
in Section 32.06(i) and, therefore, not entitled to redeem the property from
TCB.  In its second issue, ABN contends
that the trial court erred by determining that it was not equitably subrogated
to the right of redemption of the prior first lienholders.  Because we hold that ABN=s first issue should be sustained, we need not address its second
issue.

In its first issue, ABN
argues that under a liberal interpretation favoring rights of redemption, as
required by Texas law, its lien is the Afirst lien@ under
Section 32.06(i) of the tax code even though its lien was not filed of record
when the tax lien was transferred to Genesis, and that it thus had the right to
redeem the property upon foreclosure. 
Under TCB=s
interpretation of the statute, which was accepted by the trial court, the term Afirst lien@ under the
statute means first recorded lien so that, when the Genesis=s lien was recorded first, it took priority over ABN=s lien, making its lien the senior or Afirst lien,@ and ABN=s lien was relegated to junior lien status with no right of redemption
under Section 32.06(i).    








Section 32.06(i) does not
define the term Afirst lien.@  However, when a statute is
clear and unambiguous, we Ashould give the statute its common meaning.@  St. Luke=s Episcopal Hosp. v. Agbor, 952 S.W.2d
503, 505 (Tex. 1997).  When language in a
statute is unambiguous, we will seek the intent of the legislature as found in
the plain and common meaning of the words and terms used.  Id.; In re K.L.V., 109 S.W.3d 61, 65
(Tex. App.CFort Worth
2003, pet. denied).  We do not need to
resort to rules of construction or extrinsic aids to construe a statute that is
clear and unambiguous.  St. Luke=s Episcopal Hosp., 952 S.W.2d at 505; Cail
v. Serv. Motors, Inc., 660 S.W.2d 814, 815 (Tex. 1983).  When a statute fails to define a term, we
apply and use its plain meaning. See Tex.
Gov=t Code Ann. ' 312.002 (Vernon 2005) (instructing appellate court to use words= ordinary meanings).  We should
not adopt a construction that would render a law or provision meaningless. Centurion
Planning Corp. v. Seabrook Venture II, 176 S.W.3d 498, 504 (Tex. App.CHouston [1st Dist.] 2004, no pet.). 
Nor should we insert words into a statute except to give effect to clear
legislative intent.  Laidlaw Waste
Sys., Inc. v. City of Wilmer, 904 S.W.2d 656, 659 (Tex. 1995).













We disagree that ABN=s prior lien was required to be recorded first in order to be a Afirst lien@ entitling
ABN to exercise the right of redemption under ' 32.06(i).  Holding that the
term Afirst lien@ as used in
the statute refers only to a lien recorded prior to filing of the transfer tax
lien would obviously require us to insert the word Arecorded@ not
contained in the statute.  Moreover, TCB
does not explain how the statutory intent would be effectuated by restricting
the right of redemption based upon timing of recordation as between the
transferee of the tax lien (Genesis, in this instance) and the existing
lienholder.         TCB next argues that priority is nevertheless determinative
because, under established Texas law, ABN=s lien became a junior lien once Genesis=s lien was recorded first. 
Under this theory, ABN=s lien was extinguished when Genesis foreclosed, thereby still
precluding ABN from asserting the rights of a first lienholder to redemption
under Section 32.06(i).   TCB relies upon
the well-established law that, when a senior lienholder forecloses on property
subject to its lien, all junior lienholders are divested of title to the
property and their liens extinguished, so that the purchaser at the sale takes
free of any junior lienholder claims.  See Diversified Mortgage Investors v. Lloyd D.
Blaylock Gen. Contractor, Inc., 576 S.W.2d 794, 808 (Tex. 1978); Mays v.
Bank One, N.A., 150 S.W.3d 897, 900 (Tex. App.CDallas 2004, no pet.); Conseco Fin. Serv. Corp. v. J&J Mobile
Homes, Inc., 120 S.W.3d 878, 883 (Tex. App.CFort Worth 2003, pet. denied). 
But those cases and that principle do not address rights of
redemption.  We agree with our sister
court in Beaumont that priority of liens as between claimants does not affect
the applicability of a right of redemption as between an existing lienholder
and a purchaser at a tax sale.  See
Assocs. Home Equity Servs. Co. v. Hunt, 151 S.W.3d 559, 562 (Tex. App.CBeaumont 2004, no pet.) (holding principle that foreclosure of senior
lien extinguishes junior liens not determinative of effect of redemption on
continued validity of deed of trust as lien against property).  








Additionally, the principle
of lien priority based upon time of filing does not apply to a tax lien.  A lien for ad valorem taxes imposed by state,
county, or city taxing units in Texas is perfected upon attachment on January 1
of each year without further action by the taxing authority.  Tex.
Tax Code Ann. '  32.01(d) (Vernon 2001).  Therefore, a tax lien for the 2002 ad valorem
taxes attached and was perfected on the Fleckensteins= property as of January 1, 2002. 
Such a tax lien is always senior to and has priority over other liens.[3]  This is so regardless of whether it is timely
filed by the taxing authorities.  See
Conseco, 120 S.W.3d at 881-82 (holding tax liens for 1997-2000 took
priority over pre-existing perfected security interest in mobile home by virtue
of Section 32.05); Cent. Appraisal Dist. of Taylor County v. Dixie-Rose
Jewels, Inc., 894 S.W.2d 841, 843 (Tex. App.CEastland 1995, no writ) (holding tax lien superior to security
interest of secured creditor under Section 32.05 regardless of whether security
interest existed before attachment of tax lien and even though taxing authority
had taken no action to file lien).   

Specifically, Section
32.05(b) of the tax code provides, in pertinent part:

A[A]
tax lien . . . takes priority over the claim of any creditor of a person whose
property is encumbered by the lien [and over] the claim of any holder of a lien
on property encumbered by the tax lien@

 

Tex. Tax Code Ann. ' 32.05(b) (Vernon Supp. 2005).[4]  








Section 32.06(d) does provide
that a tax lien transferred as provided in that section Amust be recorded to be enforceable.@  Id. ' 32.06(d).  However, that
section refers to enforcement by the transferee, not the purchaser.  Nothing in that section indicates that
recording the transfer of a tax lien converts the tax lien to a Afirst lien@ as that
term is used in the redemption statute, so as to give it priority over a prior
existing lien.  It already has priority
and the transferee still holds nothing more than the tax lien, which it is
entitled to foreclose either in the manner provided for foreclosure of tax
liens or as specified by Section 51.002 of the property code.  Id. '' 32.06(c)(1)-(2), 32.06(d).  TCB
cites us to no authority that transfer of a tax lien gives the transferee a
greater interest than the taxing authority. 
Nor is recording necessary to protect the purchaser upon
foreclosure.  Upon redemption, the
purchaser=s interest
is adequately protected by the redemption statute, which guarantees the return
of the tax sale purchase price, plus costs and interest or 118 percent of the
amount of the judgment, whichever is less. 
Id. ' 32.06(i)
(Vernon 2001).    








 Finally, TCB argues that, because ABN had not
recorded its deed of trust when the tax lien was transferred to Genesis, ABN=s lien was void as to Genesis 
because nothing in the record indicates Genesis had notice of ABN=s prior lien at that time.  TCB
relies on Section 13.001(a) of the property code providing an unrecorded deed
is Avoid@ as to a
subsequent creditor who extends its loan and acquires its lien without notice
of the earlier lien.  Tex. Prop. Code Ann. ' 13.001(a) (Vernon 2004). 
But  the record affirmatively
establishes the contrary, that Genesis had full knowledge by virtue of the
statute and as expressly stated in Genesis=s deed of trust that the interest it was acquiring from the Denton
County tax authority, in return for its agreement to pay the delinquent taxes,
was merely a transfer of the tax lien and was subject to the statutory rights
of redemption of the owner and first lienholder.[5]   Nor can we accept TCB=s argument that it was a bona fide purchaser.   ABN had recorded its deed of trust before
the foreclosure and sale to TCB, and the notice of sale listed ABN as
lienholder.   

Additionally, a purchaser at
a tax sale buys with full knowledge that his title may be defeated by
redemption.  The right of redemption upon
foreclosure and sale for delinquent taxes was made available with the adoption
of Article VIII, section 13 of the Texas Constitution in 1876.  See Tex.
Const. art. VIII, ' 13; Assocs.
Home Equity, 151 S.W.3d at 561 (citing 22 David
B. Brooks, Texas Practice: Municipal Law and Practice ' 9.18 (2nd ed. 1999)). 
The right of redemption of an owner or anyone having an interest in the
land for a two-year period following foreclosure of a tax lien is provided by
tax code Sections 32.06(i) (redemption after foreclosure of transferred tax
lien) and 34.21 (redemption of homestead or agricultural land).  Tex.
Tax Code Ann. '' 32.06(i),
34.21 (Vernon 2004). 








A purchaser at a tax sale
receives a conditional sale, subject to defeat upon compliance with the
redemption laws by those entitled to redeem.  State v. Moak, 146 Tex. 322, 207 S.W.2d
894, 896-97 (1948); Assocs. Home Equity, 151 S.W.3d at 561; Reynolds
v. Batchelor, 216 S.W.2d 663, 666-67 (Tex. Civ. App.CFort Worth 1948, writ ref=d n.r.e.) (holding title acquired at tax sale is an estate on
condition subject to defeat by redemption). 
Thus, a purchaser at a tax sale buys with knowledge of the statutory
rights of redemption.  Rogers v.
Yarborough, 923 S.W.2d 667, 669 (Tex. App.CTyler 1996, no writ) (holding that under prior version of Section
34.21, purchaser buys with Aknowledge that his title cannot become absolute for two years@); Jackson v. Maddox, 117 S.W. 185, 185 (Tex. Civ. App.CFort Worth 1909, no writ) (holding purchaser at tax sale Asuffers no loss.  He buys with
full knowledge that his title cannot be absolute@ until redemption period expires). 








The redemption provision of
Section 32.06 mitigates the harsh effect of a transferred tax lien foreclosure
by allowing the holder of a Afirst lien,@ in addition
to the owner of the property, a specified period of time to redeem the property
from the purchaser after sale upon foreclosure of the transferred tax
lien.   It is well settled that statutes
granting redemption rights upon foreclosure of tax liens are to be construed
liberally in favor of the right of redemption. 
Rogers, 923 S.W.2d at 669 (holding policy considerations embodied
in redemption provisions of tax code call for liberal construction); T &
M Sales & Envtl. Sys., Inc. v. LSS Invs., No. 13-03-659, 2005 WL
2785603, at *5 (Tex. App.CCorpus
Christi 2005, no pet.) (mem. op.) (applying liberal construction of term Aowner@ to hold
mortgagee possessed right of redemption under similar statute); Macha v.
Carameros, 674 S.W.2d 491, 493 (Tex. App.CEl Paso 1984, no writ) (noting public policy favors liberal
interpretation of statutes providing right of redemption).  AStatutes favoring redemption are to be liberally construed; for the
sale of land for taxes is the nearest approach to tyranny that exists in a free
government, and whatever tends to modify its severity is favorable to the
citizen and to rights of property and to justice.@  Jackson, 117 S.W. at
186.

We agree with ABN that, as a
matter of law, its lien is a Afirst lien@ under
Section 32.06(i) of the tax code and was not extinguished by the foreclosure or
sale to TCB.  We hold that the trial
court erred in granting summary judgment for TCB and denying summary judgment
to ABN as the first lienholder entitled to exercise the right of redemption
under that statute and, further, that TCB was not entitled to have title
quieted in it, free and clear of ABN=s lien.  We sustain ABN=s first issue, reverse the judgment in favor of TCB and render
judgment in favor of ABN.

                                             Conclusion








Having sustained ABN=s first issue and not reaching its second issue, we reverse those
parts of the trial court=s judgment
that pertain to ABN=s request
for declaratory relief on its right to redemption[6]
and to TCB=s claim to
quiet title,[7]
and render judgment for ABN, declaring that ABN has the right to redeem the
property under the relevant version of Section 32.06(i) tax sale by paying TCB
the tax sale purchase price, plus costs, and interest accrued on the judgment
to the date of redemption or 118 percent of the amount of the judgment,
whichever is less.

 

 

ANNE GARDNER

JUSTICE

 

PANEL B:   DAUPHINOT, HOLMAN, and GARDNER, JJ.

 

DELIVERED:
July 27, 2006











[1]ABN
also named M. Suzanne Frossard as a defendant. 
The trial court granted summary judgments to Genesis and Frossard.  This court has granted a motion to dismiss,
filed jointly by Genesis and Frossard, as to those parties.  





[2]The
current version of Section 32.06 requires the tax lien transferee to provide
notice of the foreclosure to all recorded lien holders, expands the redemption
period to two years for homestead property, and allows any prior recorded lien
holder to redeem the property during those two years.  Tex.
Tax Code Ann. ' 32.06(i),
(k) (Vernon Supp. 2005).

 





[3]The
tax code does not classify a tax lien as a Afirst lien.@  Rather, the Texas Constitution classifies a
tax lien as an inextinguishable Aspecial lien@
which must be paid to the sovereign.  Tex. Const. art. VIII, ' 15; see
Enell Corp. v. Longoria, 834 S.W.2d 132, 134 (Tex. App.CSan
Antonio 1992, writ denied).  





[4]The
statute provides for limited exceptions to the priority of tax liens, but those
exceptions are not relevant to this case. 
See id. ' 32.05(c).





[5]Additionally,
we note that TCB=s
motion for summary judgment was a traditional, not a Ano
evidence,@
motion, so that absence of evidence cannot in any event support affirmance as
to its judgment.  See Tex. R. Civ. P. 166a(c), (i).





[6]Numbered
paragraphs 3 and 4 on the second page of the trial court=s
judgment.





[7]Numbered
paragraphs 1 and 2 on the third and fourth pages of the trial court=s
judgment.